IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GREGORIO C. FUNTANILLA,

      Plaintiff,                   No. CIV S-02-1157 LKK GGH P

   vs.

KAREN KELLY, et al.,

      Defendants.               <u>FINDINGS & RECOMMENDATIONS</u>

_____/

        Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983.  Pending before the court is plaintiff's motion for partial summary judgment filed November 7, 2005.  Plaintiff has moved for summary judgment as to defendants Kalvelage, L'Etoile and Lankford as to his due process and retaliation claims.  Plaintiff claims that defendants violated his right to due process when they ordered him transferred to the Security Housing Unit (SHU) in Corcoran State Prison.  Plaintiff also claims that defendants' decision to transfer him to the Corcoran SHU was motivated by retaliation.

        The issues in the pending motion present both procedural and substantive complexities.  First, for whatever reason, defendants' attorney thought fit not to supply a separate statement of facts, as is required to counter plaintiff's statement of facts.  The undersigned has denied and recommended denial of summary judgment motions when plaintiffs fail to abide by

1

the rules, and the result should be no different here simply because defendants' counsel has violated the rules, assuming plaintiff's facts as stated are supported by his own referenced exhibits and set forth a viable violation of constitutional rights.

Secondly, plaintiff's motion presents the issue whether, assuming for the moment that the SHU conditions are atypical and create hardship, an administrative, non-disciplinary transfer of a prisoner to the SHU can give rise to a liberty interest such that plaintiff is entitled to due process. Secondarily, what process would be due if a liberty interest is created is the follow-up issue. For the reasons expressed at length herein, plaintiff does have a liberty interest in such transfer, and that right to due process was violated.

Plaintiff's other presented issues, retention in SHU in alleged violation of a state procedural regulation, and alleged retaliation do not raise viable issues in this case.

SUMMARY JUDGMENT STANDARDS UNDER RULE 56

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party
> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322, 106 S. Ct. at 2552.

"[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323, 106 S. Ct. at 2553.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11, 106 S. Ct. at 1356 n. 11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

\\\\\

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (citation omitted).

On January 20, 2004, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409, 411-12 (9th Cir. 1988).

DISCUSSION

*Undisputed Facts*

This action is proceeding on the original complaint filed May 28, 2002. The following facts are undisputed.

Inmate Manago is plaintiff's documented enemy. In May 2001 both plaintiff and inmate Manago were housed on A Facility at California State Prison-Sacramento (CSP-Sac). On or around May 29, 2001, plaintiff reported that inmate Manago had stabbed him. On June 6, 2001, plaintiff was placed into administrative segregation (ad seg) because prison officials believed he was the victim of stabbing assault. Plaintiff remained in ad seg from June 6, 2001, to October 17, 2001.

Prison officials denied plaintiff's request that inmate Manago be removed from A Facility and he (plaintiff) be returned because plaintiff had two enemies housed on A Facility. Officials at CSP-Sac referred plaintiff to the Departmental Review Board (DRB) recommending a transfer to alternative housing due to plaintiff's enemy concerns at CSP-Sac. Defendants Kalvelage, L'Etoile and Lankford were members of the DRB. Defendants considered whether plaintiff should be transferred to the sensitive needs yard at Mule Creek State Prison (MCSP) or else to the Security Housing Unit (SHU) at California State Prison-Corcoran (Corcoran) for an indeterminate term.

On September 28, 2001, defendants Kalvelage, L'Etoile and Lankford elected to transfer plaintiff to Corcoran for an indeterminate SHU term with a 12 month period of observation. This decision was based on administrative as opposed to disciplinary reasons.

*Due Process*

The Due Process Clause protects against the deprivation of liberty without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556, 94 S. Ct. 2963 (1974). In order to invoke the protection of the Due Process Clause, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. Liberty interests may arise from the Due Process Clause itself or from state law. Wilkinson v. Austin, 545 U.S. 209, ___, 125 S. Ct. 2384, 2393. The Due Process Clause itself does not confer on plaintiff a liberty interest in avoiding "more adverse conditions of confinement." Wilkinson, 545 U.S. at ___, 125 S. Ct. at 2393. Under state law, the existence of a liberty interest created prison regulations is determined by focusing on the nature of the deprivation. Sandin v. Conner, 515 U.S. 472, 481-84, 115 S. Ct. 2293 (1995). Such interests are limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484.

In Wilkinson, the Supreme Court found that the conditions of the Ohio Supermax prison imposed an atypical and significant hardship "under any plausible baseline." 545 U.S. at ___, 125 S. Ct. at 2394-2395. In Tapia v. Alameida, 2006 WL 842470, No. CIV 03-5422 AWI

5

SMS (March 29, 2006), the plaintiff alleged violation of his right to due process based on the imposition of a term in the Corcoran SHU. In Tapia, the defendants "concede[d] in light of the Supreme Court's decision in Wilkinson, [that] plaintiff had a protected liberty interest in avoiding confinement in the SHU." 2006 WL 842470 *6. Based on this concession, this court also finds that plaintiff in the instant case had a protected liberty interest in avoiding confinement in the Corcoran SHU.

Moreover, plaintiff's description of the SHU conditions in his declaration filed November 7, 2005, support a finding that the conditions of the Corcoran SHU imposed an atypical and significant hardship. Plaintiff states that while housed in the SHU, he was deprived of his personal property, allowed access to the exercise yard for three hours every seven days and sometimes only three hours every fourteen days or more, denied contacts visits and telephone calls as well as access to church and religious services. Plaintiff's Declaration, ¶ 7-8. Plaintiff also claims that while in the SHU, he was confined to his cell for up to twenty-four hours a day for up to three to four days. Id., ¶ 8.[1] Taken together, and over a long period of time, these conditions impose an atypical and significant hardship within the correctional context. Wilkinson, 125 S. Ct. at 2395.

Plaintiff also argues that he had a liberty interest because his release date from prison was extended from April 17, 2016, to April 13, 2021, because he was unable to work or attend school while housed in the SHU. In support of this claim, plaintiff cites his exhibits O and T. Exhibit O is a copy of defendants' September 28, 2001, DRB report stating that plaintiff's parole release date was April 27, 2016. Exhibit T is a classification committee report for plaintiff dated April 8, 2003. This document identifies plaintiff's parole date as April 13, 2021.

---

[1] Plaintiff also alleges that while housed in the SHU other inmates spit on him, threw urine and feces on him and kicked him. Unlike plaintiff's other allegations regarding the conditions at the Corcoran SHU, these allegations do not involve a prison policy. Accordingly, the court does not consider these conditions when determining whether plaintiff has a liberty interest.

1   In support of his claim that his placement in SHU extended his release date, plaintiff cites Cal. Code Regs. tit. 15, § 3044(b)(5) which provides that inmates in indeterminate lock-up status in a segregated housing program shall earn one day credit for each two days served. In contrast, inmates working full time or in full time educational programs earn day for day credits. Cal. Code Regs. tit. 15, § 3044(b)(1) & (1)(A).

There is no due process issue per se because an inmate could not work. One does not have a constitutional right to work in prison or obtain work credits. See Toussaint v. McCarthy, 801 F.2d 1080, 1094-95 (9th Cir.1986). However, when viewed in the context of the case, the harsher conditions vis-a-vis opportunity to earn credits is simply another factor in the comparative analysis of conditions within and without the SHU. The court has already determined that plaintiff possessed a liberty interest in not being arbitrarily assigned to the SHU.

Having found that plaintiff had a liberty interest regarding his placement in the Corcoran SHU, the court next considers what process was due. "Where the inquiry draws more on the experience of prison administrators, and where the State's interest implicates the safety of other inmates and prison personnel, the informal nonadversary procedures set forth in Greenholtz v. Inmates of Neb. Penal and Correctional Complex, 442 U.S. 1, 99 S. Ct. 2100, 60 L.Ed.2d 668 (1979) and Hewitt v. Helms, 450 U.S. 460, 103 S. Ct. 864, 74 L.Ed.2d 675 (1983), provide the appropriate model. Greenholtz, supra, at 16, 99 S. Ct. 2100 (level of process due for inmates being considered for release on parole includes opportunity to be heard and notice of any adverse decision); Hewitt, supra, at 473-476, 103 S. Ct. 864 (level of process due for inmates being considered for transfer to administrative segregation includes some notice of charges and an opportunity to be heard.)" Wilkinson, 125 S. Ct. at 2397.

In Wilkinson, placement in the Supermax prison was based on a security classification made of the prisoners upon their entering the Ohio prison system. 125 S. Ct. at 2389. This classification was subject to modification at any time based on the inmate's term if, for instance, he engaged in misconduct or was deemed a security risk. Id. The Supreme Court in

1  Wilkinson found that the prisoner's placed in the Supermax prison were entitled to the
2  procedures described in Greenholtz and Hewitt.  125 S. Ct. at 2397.
3              Pursuant to Wilkinson, this court finds that plaintiff was entitled to notice of the
4  reasons for his placement in the Corcoran SHU and an opportunity to be heard.  Like the
5  prisoners in Wilkinson, plaintiff was placed in more restrictive housing for
6  administrative/security reasons than disciplinary reasons.  Plaintiff's unopposed evidence
7  indicates that plaintiff was not given notice of the reasons for his placement in the SHU or an
8  opportunity to be heard regarding his transfer.  Defendants' DRB report indicates that defendants
9  based their decision to transfer plaintiff based on review of his record and that no hearing was
10 held:

> The DRB has thoroughly reviewed all case factors and DRB referral documents, noting Inmate Funtanilla's complete failure and unwillingness to successfully program at CSP-SAC, as well as other institutional placements in the past.  His history of disregarding Departmental Rules and Regulations has been documented for the last several years.  Noted is his background of manipulation tactics and stalking female staff members, which, at times, has created a security and staff issue.  The DRB carefully reviewed the Confidential Memorandums submitted by SAC staff, dated 6-22-01, 6-18-01, 6-07-01, and 6-07-01.  It is obvious that inmate Funtanilla falsely alleged that he was the victim of a slashing assault in order to influence a potential transfer or for litigious gains against CDC.  The DRB agrees that Inmate Funtanilla is in need of an environment that can closely monitor his activities and prevent him from generating safety, security, and custodial concerns for both inmates and staff.  Additionally, a close setting will be sufficient in providing for any safety issues that may be claimed by Inmate Funtanilla.  The DRB has determined that the only viable option at this time is an Indeterminate SHU placement, which will be able to provide Inmate Funtanilla with a closed, monitored, safe, and secured capable setting of controlling the inmate's behavior.  Therefore, the DRB elects to: 1. Approve Indeterminate SHU placement for a 12-month period of observation.  2. The inmate to be transferred to COR to serve this term.  3. <u>The SAC C& PR to facilitate this transfer within 30 days after receiving this action</u>.  4. The SAC C&PR to complete the CDC-840 with applicable transfer information/administrative determinates prior to the inmate's transfer.  5. Receiving institutional staff to review this case after 12 months to evaluate for appropriate housing commensurate with all case factors and submit a recommendation to the DRB for review/placement consideration.  6. Receiving SHU staff to monitor potential enemy concerns based on review of the CDC-812/812-A.

25 Plaintiff's Exhibit O.
26 \\\\\

1    In his declaration filed in support of his partial motion for summary judgment, plaintiff states that defendants did not give him notice of a hearing or an opportunity to present a defense. Plaintiff's Declaration, ¶ 10. This statement indicates that plaintiff was not granted a hearing or other opportunity to be heard, as required by Wilkinson.

    The court notes that defendants' DRB report states that plaintiff had refused to attend the Institutional Classification Committee hearings since his placement in ad seg. Plaintiff's Exhibit O. This statement does not indicate that plaintiff refused to attend any hearing regarding his placement in the Corcoran SHU.

    Because plaintiff did not receive the process he was due prior to his transfer to the Corcoran SHU, i.e. notice and an opportunity to be heard, plaintiff should be granted summary judgment as to this claim.

    Finally, plaintiff argues that Cal. Code Reg. tit. 15, § 3341.5(c)(2)(A)(1) provides that inmates serving indeterminate SHU sentences shall be reviewed by the classification committee at least every 180 days for consideration of release to the general inmate population. Plaintiff argues that defendants violated his right to due process by not reviewing his indeterminate SHU terms every 180 days.

    Assuming that § 3341.5(c)(2)(A)(1) creates a liberty interest, the court finds that plaintiff has failed to link defendants to this claim. See Madrid, 889 F. Supp. at 1271 (§ 3341.5(c)(3) provides a separate basis for plaintiffs' liberty interest in being housed in the general population with respect to those inmates confined in the SHU for over 11 months). Section 3341.5(c)(2)(A)(1) provides that it is the duty of the *classification committee* to review an inmate's indeterminate SHU sentence. Defendants are members of the Departmental Review Board. Defendants are not members of the classification committee at Corcoran that failed to review plaintiff's indeterminate SHU term. While it is possible that defendants may have somehow contributed to the delay in the review of plaintiff's SHU term by the Corcoran Classification Committee, there is no evidence to support such a claim.

1    For the reasons discussed above, the court recommends that plaintiff's motion for
2 partial summary judgment with respect to his due process claim be denied.

3    *Retaliation*

4    Plaintiff alleges that defendants ordered him placed in the Corcoran SHU in
5 retaliation for filing his grievance claiming that prison officials failed to protect him from inmate
6 Manago, who plaintiff claims stabbed him.

7    In order to state a retaliation claim, a plaintiff must plead facts which suggest that
8 retaliation for the exercise of protected conduct was the "substantial" or "motivating" factor
9 behind the defendant's conduct. See Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th
10 Cir. 1989). The plaintiff must also plead facts which suggest an absence of legitimate
11 correctional goals for the conduct he contends was retaliatory. Pratt v. Rowland, 65 F.3d 802,
12 806 (9th Cir. 1995) (citing Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985). Verbal
13 harassment alone is insufficient to state a claim. See Oltarzewski v. Ruggiero, 830 F.2d 136, 139
14 (9th Cir. 1987). However, even threats of bodily injury are insufficient to state a claim, because a
15 mere naked threat is not the equivalent of doing the act itself. See Gaut v. Sunn, 810 F.2d 923,
16 925 (9th Cir. 1987). Mere conclusions of hypothetical retaliation will not suffice, a prisoner
17 must "allege specific facts showing retaliation because of the exercise of the prisoner's
18 constitutional rights." Frazier v. Dubois, 922 F.2d 560, 562 (n. 1) (10th Cir. 1990).

19    Plaintiff appears to argue that defendants chose to send him to the Corcoran SHU,
20 as opposed to the less restrictive MCSP Sensitive Needs Yard, in retaliation for him filing a
21 grievance complaining that prison officials had failed to protect him from inmate Manago. In
22 support of this claim, plaintiff argues that the reasons defendants gave for his transfer for the
23 Corcoran SHU were not legitimate.

24 \\\\\
25 \\\\\
26 \\\\\

The DRB report described the reasons behind and circumstances of plaintiff's referral to the DRB as follows:

> REASONS FOR REFERRAL: This case has been referred to the DRB for placement review based on the following case factors:
> This case is a DRB Transfer Controlled Case, which requires a DRB review for transfer purposes.  DRB last reviewed this case on 11-06-98, and a copy of this action is attached for review.  At that time, the DRB noted that Inmate Funtanilla had been identified as providing assistance as a witness in a staff misconduct case at PBSP.  At the recommendation of the Del Norte District Attorney's office, the DRB granted a Meritorious Sentence Reduction.  The DRB also noted that the inmate had received a recent disciplinary action for Threats to Kill a Peace Officer.  He was assessed a 9-Month SHU term for this matter.  The DRB noted numerous documented enemies, which were housed on a statewide basis, limiting Inmate Funtanilla's housing options.  The DRB also noted safety concerns based on his prior assistance with an Official Departmental proceeding.  The DRB elected to approve the transfer of Inmate Funtanilla to SAC-IV, FAC A, upon the completion of his SHU term.  The DRB also retained transfer control.
>
> This case is now being referred to the DRB for alternate placement consideration based on the inability to continue to house Inmate Funtanilla on FAC A due to enemy concerns.
>
> CIRCUMSTANCES: Inmate Funtanilla was received into CDC in 1990 from San Francisco County for Possession of a Firearm by an Ex-Felon, Aiding and Abetting Rape with a Foreign Object, Oral Copulation in Concert Rape, Resist with Force and Violence (a Weapon), and Oral Copulation with Force.  He was sentenced to a total of 44 years, and has been identified as requiring CCCMS Level of Care.  Funtanilla has an extensive disciplinary record.  He has received a minimum of 64 Rules Violation Reports dating from 1990, some of which have resulted in numerous SHU terms.  The most recent incidents are as follows.
>
> * 5-31-01–Disobeying Orders
>
> *6-6-01–Providing False Information Resulting in Disruption of Facility Lockdown.  Inmate Funtanilla alleged that he had been the victim of a slashing assault, which proved to be false.  According to Confidential sources at SAC, Inmate Funtanilla's reasons for making false allegations were to achieve a transfer to CMF, as well as for monetary gain via potential frivolous lawsuits.
>
> *He is presently housed in the SAC ASU Pending this DRB placement review.  He has refused to attend ICC since his ASU placement.

Plaintiff's Exhibit O.

The DRB report went on to describe the Classification Services Recommendation:

> CSU believes that, based on a review of all case factors, specifically the Confidential Memorandum, that Funtanilla has attempted to manipulate a transfer Making False Allegations.  His history and continued disregard for CDC Rules

11

    and Regulations and failure to program in a positive manner is horrific.  Inmate Funtanilla has been given every chance to be housed in a safe and secure environment, however, has chosen to ignore these opportunities and instead, creates problematic situations that "challenge staff on a daily basis."  Based on his behavior and what has been characterized as "traits of a sexual predator," placement at the MCSP SNY appears inappropriate.  It appears that Inmate Funtanilla should be placed in a close setting for a period of observation where his behavior can be monitored on a regular basis to ensure his safety, but at the same time, deter him from creating security/custodial concerns.  The CSU therefore recommends that the DRB approve Inmate Funtanilla for an Indeterminate SHU term for a 12 month period of observation.

Plaintiff's Exhibit O.

    As set forth in the section above discussing plaintiff's due process claim, the DRB report went on to recommend plaintiff's transfer to the Corcoran SHU for the following reasons: 1) plaintiff's failure to successfully program at CSP-SAC and past institutional problems; 2) plaintiff's history of disregarding Departmental Rules and Regulations; 3) plaintiff's history of manipulation tactics and stalking female staff members; 4) plaintiff falsely reported that inmate Manago stabbed him.  Id.  The DRB found that transfer to the SHU was more appropriate than the sensitive needs yard because plaintiff required an environment where his activities could be monitored and he could be prevented from generating safety and security concerns.  Id.

    Plaintiff argues that the DRB's reasons for transferring him to the SHU rather than the Sensitive Needs Unit were not legitimate.  First, plaintiff argues that inmate Manago stabbed him.  Plaintiff has presented conflicting evidence regarding whether inmate Manago stabbed him.  The DRB report refers to several confidential reports indicating that plaintiff made up this story in order to manipulate a transfer.  Accordingly, the court finds that this is a materially disputed fact.

    Plaintiff argues that his behavior was "above average" in that he only had four serious rules violation reports from 1999-2001.  Four serious rules violation reports within two years supports that DRB's finding that plaintiff did not successfully program at CSP-SAC.  Plaintiff also does not dispute the finding in the DRB report that he had 64 Rules Violations Reports since 1990.  Based on this circumstance, the DRB correctly found that plaintiff had a

history of disregarding departmental rules and regulations.

Assuming plaintiff made up the story that inmate Manago attacked him, combined with his disciplinary history, the court would find that defendants had legitimate reasons to find that plaintiff should be transferred to the more restrictive SHU environment, where his activities could be monitored and he could be prevented from generating safety and security concerns. Under these circumstances, plaintiff's retaliation claim would fail. Because plaintiff has not met his burden of demonstrating the absence of disputed material facts regarding this claim, his motion for summary judgment as to this claim should be denied.

Accordingly, IT IS HEREBY RECOMMENDED that plaintiff's November 7, 2005, motion for partial summary judgment be granted with respect to his procedural due process claim and be denied in all other respects.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: 7/6/06

/s/ Gregory G. Hollows

GREGORY G. HOLLOWS
UNITED STATES MAGISTRATE JUDGE

ggh:kj
fun1157.sj