IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GREGORIO C. FUNTANILLA,

      Plaintiff,                    No. CIV S-02-1157 LKK GGH P

    vs.

KAREN KELLY, et al.,

      Defendants.             PRETRIAL ORDER

_____/

        Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983.  This action is proceeding on the original complaint filed May 28, 2002, as to defendants Kelly, Sacks, Jaffe, Lipon, Ewing, Holliday, Stewart, Stiles, Goughnour, Walker, Guyton, Feryance, Lieber, Karde, Lucas, Rianda, Kalvelage, L'Etoile and Lankford.

        Pursuant to court order the parties have submitted pretrial statements.  Upon review of the statements and the remainder of the file, and good cause appearing therefor, this court makes the following findings and orders:

JURISDICTION/VENUE

        Jurisdiction is predicated upon 28 U.S.C. § 1331 arising under 42 U.S.C. § 1983.  Venue is proper.  There is no dispute over either jurisdiction or venue.

/////

JURY/NON-JURY

    Both parties have timely requested trial by jury.

UNDISPUTED FACTS

    1. During all relevant times, defendants Kelly, Sacks, Jaffe, Lipon, Ewing, Holliday, Stewart, Stiles, Goughnour, Walker, Guyton, Feryance, Lieber, Karde and Lucas were employed at California State Prison-Sacramento (CSP-Sac).

    2. During all relevant times, defendant Rianda was the Chief of Inmate Appeals for the California Department of Corrections and Rehabilitation (CDCR).

    3. During all relevant times, defendants Kalvelage and L'Etoile were members of the Departmental Review Board (DRB).

    4. During all relevant times, defendant Lankford was a coordinator for the DRB.

    6. In 1999 plaintiff was housed at CSP-Sac.

    7. Plaintiff was transferred to the Corcoran Security Housing Unit (SHU) in October 2001.

DISPUTED FACTUAL ISSUES[1]

    1. Whether defendants Stiles, Lipon and Ewing denied plaintiff's request to be housed at Atascadero State Hospital (ASH) for mental health treatment in violation of the Eighth Amendment.

    2. Whether defendant Stiles denied plaintiff's request to be housed at ASH in retaliation for plaintiff being a "snitch."

---

[1] The parties have listed a myriad of disputed facts. The purpose of the pretrial order is to delineate the *issues* to be litigated at trial. It is not the purpose of the pretrial order to list every possibly disputed fact.

    The court also observes that in his pretrial statement, plaintiff has included several disputed facts which were not raised in the original complaint. For example, plaintiff lists as a disputed fact, "Whether any defendants punished plaintiff because he is a member of the Seventh Day Adventist Church of the World." The claims raised in the original complaint are clearly set forth in the December 13, 2004, findings and recommendations addressing defendants' motion to dismiss. These claims do not include a claim for religious discrimination.

3. Whether defendants Stiles, Lipon, Kelly, Jaffe and Ewing failed to treat plaintiff's mental illness in violation of the Eighth Amendment.

4. Whether on or around December 1999 defendant Stiles retaliated against plaintiff for filing a lawsuit and testifying against a former prison guard by falsely charging him with over familiarity with staff and having him placed and retained in administrative segregation.

5. Whether defendants Stiles, Ewing, Feryance, Walker and Lipon denied plaintiff's request for single cell status in retaliation for plaintiff testifying against a former prison guard and for his legal activities.

6. Whether defendant Stiles violated plaintiff's right to due process by placing him in administrative segregation after the assault on him by his cellmate on April 13, 2000.

7. Whether defendant Stiles violated plaintiff's right to due process by placing him in administrative segregation following the attack on him by his cellmate on May 28, 2000.

8. Whether on August 5, 1999, defendants Kelly and Holliday told another inmate that plaintiff was a snitch and a sex offender in violation of the Eighth Amendment.

9. Whether on August 31, 1999, defendants Kelly and Holliday referred to plaintiff as a sex offender in front of other inmates in violation of the Eighth Amendment

10. Whether defendants Lipon and Ewing failed to recommend single cell status for plaintiff in violation of the Eighth Amendment.

11. Whether on September 1, 1999, defendant Holliday denied plaintiff's request for mental health treatment in retaliation for plaintiff's testimony against a former prison guard and because he was a potential witness in a federal court case.

12. Whether on September 13, 1999, defendant Holliday wrote a false rules violation report against plaintiff in retaliation for plaintiff requesting mental health treatment.

13. Whether from September to November 1999 defendants Holliday and Stewart told plaintiff's cellmate that plaintiff was a sex offender, a snitch and asked the cellmate to assault plaintiff in violation of the Eighth Amendment.

14.  Whether in November 1999 defendant Holliday violated plaintiff's right to due process by issuing a rules violation report falsely charging him with conduct which could lead to violence or disorder.

15.  Whether defendant Stewart retaliated against plaintiff for filing this action by threatening him with placement in administrative segregation.

16.  Whether on or around December 1999 defendant Guyton falsely charged plaintiff with over familiarity with staff and had him placed in administrative segregation in retaliation for filing this lawsuit.

17.  Whether on December 22, 1999, defendant Feryance told plaintiff that he would not be released from administrative segregation in retaliation for his testimony against a former prison guard and for filing lawsuits against the other defendants.

18.  Whether in 1999 defendant Feryance denied plaintiff's request for single cell status after he complained that his cellmates threatened his life in violation of the Eighth Amendment.

19.  Whether defendants Feryance and Walker retaliated against plaintiff for reporting the assault on him by his cellmate on April 13, 2000, by placing him in administrative segregation.

20.  Whether on April 19, 2000, defendants Feryance and Goughnor retaliated against plaintiff for filing complaints with the CDC Internal Affairs and the FBI when he told plaintiff that he would remain in administrative segregation until he changed his mind about filing these complaints.

21.  Whether following the attack on plaintiff by his cellmate on May 28, 2000, defendant Feryance violated plaintiff's right to due process by housing him in administrative segregation.

22.  Whether on December 30, 1999, defendant Walker retaliated against plaintiff when he told him that he would not be released from administrative segregation because he had

4

testified against a former prison guard and was filing lawsuits against the other defendants.

23. Whether in February 2000 defendants Lucas and Karde told plaintiff's cellmate that plaintiff was a snitch and a sex offender in violation of the Eighth Amendment.

24. Following plaintiff's release from administrative segregation, whether defendants Lucas and Karde continued to make improper statements to plaintiff's new cellmate regarding plaintiff in violation of the Eighth Amendment.

25. Whether defendant Lieber retaliated against plaintiff for reporting the assault on him by his cellmate by placing him in administrative segregation.

26. When defendant Lieber retaliated against plaintiff for refusing to have an inmate returned to his cell by housing him in administrative segregation.

27. Whether defendant Rianda violated plaintiff's right to due process by failing to timely respond to plaintiff's appeal requesting single cell status.

28. Whether defendants Kalvelage, L'Etoile and Lankford violated plaintiff's right to be free from retaliation, his right to due process and the Eighth Amendment by imposing a 12 month indeterminate SHU sentence for plaintiff at Corcoran.

29. The nature and extent of plaintiff's injuries.

DISPUTED EVIDENTIARY ISSUES

Defendants state that they anticipate bringing motions in limine to exclude evidence of any adverse actions on investigations pertaining to any of the defendants.

SPECIAL FACTUAL INFORMATION

None applicable.

RELIEF SOUGHT

1. In the complaint, plaintiff seeks compensatory and punitive damages in unspecific amounts.

2. In addition, plaintiff seeks "triple compensatory damages" of $125 per day for each day spent in the Corcoran SHU against defendants Kalvelage, L'Etoile and Lankford.

1    3. The complaint seeks unidentified injunctive relief.

POINTS OF LAW

The parties shall brief the elements, standards and burden of proof of the claims herein presented by plaintiff under the applicable constitutional amendment, statutes and regulations. Trial briefs shall be filed with this court no later than ten days prior to the date of trial in accordance with Local Rule 16-285.

ABANDONED ISSUES

No issues have been abandoned.

WITNESSES

Plaintiff anticipates calling, either in person or by deposition: Dr. Watson, Dr. Zuckerman, and inmates Morales, Ehtridge, Vulpus, Smith, Taylor and Zamora.

Plaintiff's request for incarcerated witnesses does not comply with the requirements for obtaining these witnesses as set forth in the August 22, 2005, scheduling order. Plaintiff does not state whether his incarcerated witnesses will testify involuntarily or involuntarily. Plaintiff also does not identify these witnesses by CDC number or address. In addition, plaintiff does not describe the proposed testimony of these witnesses. Accordingly, within twenty days of the date of this order, plaintiff shall file a supplemental pretrial statement addressing these matters.

Defendants anticipate calling, either in person or by deposition, all nineteen defendants and R. Payne, B. Krukall, S. Chaiken and R.N. Davis.

Each party may call any witnesses designated by the other.

    A.    No other witness will be permitted to testify unless:

        (1) The party offering the witness demonstrates that the witness is for the purpose of rebutting evidence which could not be reasonably anticipated at the pretrial conference, or

        (2) The witness was discovered after the pretrial conference and the

1         proffering party makes the showing required in "B," below.

2        B.    Upon the post pretrial discovery of witnesses, the party shall promptly
3 inform the court and opposing parties of the existence of the unlisted witnesses so that the court
4 may consider at trial whether the witnesses shall be permitted to testify. The witnesses will not
5 be permitted unless:

6         (1) The witnesses could not reasonably have been discovered prior to
7         pretrial;
8         (2) The court and the opposing party were promptly notified upon
9         discovery of the witnesses;
10        (3) If time permitted, the party proffered the witnesses for deposition;
11        (4) If time did not permit, a reasonable summary of the witnesses'
12        testimony was provided to the opposing party.

13 <u>EXHIBITS, SCHEDULES AND SUMMARIES</u>

14        Plaintiff anticipates offering: 1) psychiatrist medication orders from 1999-2003; 2)
15 psychiatric progress notes from 1999-2003; 3) Dr. Zuckerman's progress notes from 1998-2003;
16 4) psychologist progress notes from 1999-2003; 5) Dr. Jackson's progress notes from 2000 to
17 2001; 6) the declaration of Dr. Watson; 7) psychiatric technician notes from 1999-2003; 8)
18 medical technical assistant notes from 1999-2003; 9) medical doctor notes from 1999-2003; 10)
19 outpatient progress notes from 1999-2003; 11) inpatient progress notes from 1999-2003; 12) all
20 CDC 7219 unusual incidents from 1999-2003; 13) all mental health assessment forms stemming
21 from the 1998 memorandum by Deputy Director of Corrections Tristan from 1999-2001; 14)
22 relevant portions of plaintiff's central file.

23        Defendants anticipate offering: 1) relevant portions from plaintiff's medical and
24 psychiatric files; 2) relevant documents from plaintiff's central file including but not limited to
25 37 documents specifically identified in defendants' pretrial statement; and 3) the relevant
26 sections from the California Department Operations Manual.

Both plaintiff and defendants have not specifically identified many of the exhibits they intend to offer at trial. The parties are directed to exchange exhibits ten days prior to the trial confirmation hearing. At that time, both parties shall file with the court lists which specifically identify each exhibit they provided to the opposing party.

Each party will file any objections to exhibits ten days before trial. Each exhibit not previously objected to will be forthwith received into evidence. Plaintiff will use numbers to mark exhibits; defendant will use letters.

    A. No other exhibits will be permitted to be introduced unless:

        1. The party proffering the exhibit demonstrates that the exhibit is for the purpose of rebutting evidence which could not have been reasonably anticipated, or

        2. The exhibit was discovered after the issuance of this order and the proffering party makes the showing required in Paragraph "B," below.

    B. Upon the post pretrial discovery of exhibits, the parties shall promptly inform the court and opposing party of the existence of such exhibits so that the court may consider at trial their admissibility. The exhibits will not be received unless the proffering party demonstrates:

        1. The exhibits could not reasonably have been discovered earlier;

        2. The court and the opposing party were promptly informed of their existence;

        3. The proffering party forwarded a copy of the exhibit(s) (if physically possible) to the opposing party. If the exhibit(s) may not be copied the proffering party must show that he has made the exhibit(s) reasonably available for inspection by the opposing party.

The parties are directed to bring an original and one copy of each exhibit to trial. The original exhibit becomes the property of the court for purposes of trial. The copy is for bench use during

trial.

DISCOVERY DOCUMENTS

Plaintiff states that he will offer into evidence at trial all documents produced during discovery. These documents, as discussed above, will be provided to defendants' counsel at the time of exhibit exchange prior to the trial confirmation hearing.

FURTHER DISCOVERY OR MOTIONS

Discovery is closed.

In their pretrial statement, defendants state that they will seek leave to file a motion for summary judgment. This request should be raised at the trial confirmation hearing. However, the court observes that scheduling is critical. Judicial resources to review belated summary judgment motions are nearly non-existent. Defendants' failure to abide by the scheduling order interferes with the efficient management of court business.

Motions in limine must be filed seven days prior to the trial.

STIPULATIONS

At this time the parties have reached no stipulations.

AMENDMENTS/DISMISSALS

None.

SETTLEMENT NEGOTIATIONS

It appears that a settlement conference is not warranted in this case.

AGREED STATEMENTS

None.

SEPARATE TRIAL OF ISSUES

Both parties seek a separate trial on the issue of punitive damages, if necessary.

IMPARTIAL EXPERTS/LIMITATION OF EXPERTS

Not applicable.

/////

ATTORNEYS' FEES

Plaintiff seeks attorney's fees pursuant to Local Rule 54-293(c), but he is not represented by counsel. Defendants seek attorneys' fees.

TRIAL CONFIRMATION HEARING

A trial confirmation hearing is set for September 10, 2007, at 11:15 a.m. before the Honorable Lawrence K. Karlton. Plaintiff shall appear via video conference.

ESTIMATED TIME OF TRIAL/TRIAL DATE

Jury trial is set for January 15, 2008, at 10:30 a.m. before the Honorable Lawrence K. Karlton. Defendants anticipate a fifteen to twenty day trial.

PROPOSED JURY VOIR DIRE AND PROPOSED JURY INSTRUCTIONS

The parties are directed to Local Rule 47-162(a) and Local Rule 51-163(a) for procedures and time limits regarding proposed voir dire and proposed jury instructions, respectively. The provisions of said local rules notwithstanding, the parties shall file proposed voir dire and proposed jury instructions, if any, not later than fourteen days before the date set for trial.

MISCELLANEOUS

The parties are directed to Local Rule 16-285 regarding the contents and the deadline for filing trial briefs.

OBJECTIONS TO PRETRIAL ORDER

Each party is granted fifteen days from the date of this order to file objections to same. If no objections are filed, the order will become final without further order of this court.

DATED: 7/27/07

/s/ Gregory G. Hollows
_____
UNITED STATES MAGISTRATE JUDGE

fun1157.pto